ORDERED.

**Dated: May 21, 2018**

Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Christopher Bateman,

Debtor.
_____________________________________/

Case No. 8:14-bk-05369-RCT
Chapter 7

**MEMORANDUM DECISION**

Christopher Bateman obtained a discharge in this chapter 7 case in 2014. His discharge included an old cell phone debt to Verizon Wireless Personal Communications, LP ("Verizon"). In early 2015, Verizon, acting through a debt collector, attempted to collect the discharged debt. Now, three years later, Mr. Bateman, on behalf of himself and others similarly situated, seeks to hold Verizon in contempt for violating this court's discharge order and the discharge injunction imposed pursuant to 11 U.S.C. § 524.[1]

Verizon responds that this contested matter is covered by the arbitration agreement in its original cell phone contract with Mr. Bateman. Accordingly, Verizon moves to compel arbitration of the Motion for Contempt and to stay these proceedings pending the outcome of the arbitration.[2]

---

[1] Class Motion for Sanctions against Verizon Wireless Personal Communications, LP ("Motion for Contempt") (Doc. 19).

[2] Preliminary Response in Opposition to Debtor's Putative Class Motion for Sanctions and Cross-Motion to Compel Arbitration and to Stay Proceedings on the Class Motion ("Motion to Compel") (Doc. 29).

The issue presented is whether the Federal Arbitration Act ("FAA")[3] requires that this contested matter be stayed and sent to arbitration.

## JURISDICTION

Jurisdiction of this matter is proper under 28 U.S.C. § 1334 and the standing order of reference entered by the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157.[4]

## BACKGROUND

Mr. Bateman purchased a personal cell phone from Verizon in 2011 and simultaneously entered into a service agreement. As part of this transaction, Mr. Bateman signed a receipt agreeing to the terms and conditions in the Verizon Customer Agreement, which includes an arbitration provision (the "Customer Agreement") (Doc. 29-1). The Customer Agreement also cleverly states that Verizon may unilaterally change the Customer Agreement at any time (Doc. 29-2, p. 4). And in fact, Verizon revised the terms of the Customer Agreement, including the arbitration provision, in 2012 (presumably without consulting Mr. Bateman).

The revised Customer Agreement states, in relevant part:

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. . . WE ALSO BOTH AGREE THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.

---

[3] 9 U.S.C. § 1, *et seq*.

[4] *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 973 (11th Cir. 2012) (finding that proceedings to enforce the discharge injunction under § 524(a)(2) of the Bankruptcy Code are core proceedings under 28 U.S.C. § 157 as actions "arising under" the Bankruptcy Code).

(Doc. 29-3, pp. 8-9) (emphasis in original).[5]

Two years later, in May 2014, Mr. Bateman filed his chapter 7 bankruptcy petition (Doc. 1). Verizon is duly listed as a creditor with a pre-petition general unsecured claim of $481.00 and is included in the mailing matrix attached to the petition (Doc. 1, pp. 20 & 41). Once filed, the bankruptcy proceeded uneventfully and in August 2014 this court entered an order discharging Mr. Bateman's debts as provided in 11 U.S.C. § 727 (the "Discharge Order") (Doc. 14).

After entry of the Discharge Order, Verizon, acting through an agent, Convergent Outsourcing, Inc. ("Convergent"), sent Mr. Bateman a collection notice dated January 20, 2015. The letter states that Mr. Bateman owes Verizon $568.02, but that Convergent is willing to accept $198.81 to settle the claim (Doc. 19-1). Based on this letter, Mr. Bateman claims that Verizon has violated the Discharge Order. He not only seeks to hold Verizon in contempt for this alleged violation but also seeks class certification on behalf of all other similarly victimized debtors. Mr. Bateman asserts that Verizon has "flawed policies" and a pattern and practice of attempting to collect discharged debts (Doc. 19, ¶¶ 25-38).

Verizon of course denies these allegations, but more importantly here, moves to stay these proceedings and compel arbitration (Doc. 29). Notwithstanding Mr. Bateman's discharge, Verizon argues that Mr. Bateman remains bound by the arbitration provision in the Customer Agreement (Doc. 29, ¶¶ 5-10).

Meanwhile, Mr. Bateman also filed a complaint, first in federal district court,[6] and later in state court,[7] alleging that Verizon's conduct warrants class certification to pursue violations of

[5] The arbitration provision cited in Verizon's Motion to Compel is taken from the original Customer Agreement (Doc. 29-2). But, Verizon revised the Customer Agreement, including the arbitration provision, in February 2012 (Doc. 29-3). Therefore, the February 2012 Customer Agreement is the operative agreement and the one analyzed by the court.

[6] *See Bateman v. Verizon Wireless Personal Communications LP*, No. 8:15-cv-02096-JDW-AEP (M.D. Fla. 2015).

[7] *See Bateman v Verizon Wireless Personal Communications LP,* No. 16-007621-CI-8) (Fla. 6th Cir. Ct. 2016) (the "State Court Action").

consumer protection laws. His district court complaint was dismissed for lack of jurisdiction. Verizon also tried to stay the State Court Action and compel arbitration, but was unsuccessful. Its motion to stay the State Court Action and to compel arbitration was denied on December 14, 2017. Verizon appealed the state court's decision to the Second District Court of Appeals where it remains pending.[8]

**APPLICABLE LAW**

The FAA was enacted in 1925 "in response to widespread judicial hostility to arbitration agreements."[9] Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[10]

This section of the FAA represents an early congressional declaration of a "liberal federal policy favoring arbitration,"[11] and the "fundamental principle that arbitration is a matter of contract."[12] Ultimately, the goal of the FAA is to "place arbitration agreements on equal footing with other contracts"[13] and to "enforce them according to their terms."[14]

---

[8] *See Verizon Wireless Personal Communications, LP v. Bateman*, Case No. 2D18-0161 (Fla. 2d DCA 2018).

[9] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

[10] 9 U.S.C. § 2.

[11] *Concepcion,* 563 U.S. at 339 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983).

[12] *Id*. (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

[13] *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

[14] *Id*. (citing *Volt Information. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

The FAA, however, "does not mandate the arbitration of all claims."[15] "Arbitration under the [FAA] is a matter of consent, not coercion."[16] Indeed, enforcement of arbitration agreements according to negotiated terms is intended to "give effect to the contractual rights and expectations of the parties."[17]

Consistent with this purpose, the Eleventh Circuit has developed a two-step inquiry when considering a motion to compel arbitration. First, the court must determine whether the parties have actually agreed to arbitrate the dispute.[18] If the parties have actually agreed, then the court must decide whether any "legal constraints external to the parties' agreement foreclose arbitration."[19] Bankruptcy may be one of the legal constraints foreclosing arbitration, but only if the matter under consideration is within the bankruptcy court's "core" jurisdiction, and if enforcement of the arbitration agreement inherently conflicts with the underlying purpose of the Bankruptcy Code.[20]

## ANALYSIS

### *A. Did the Arbitration Agreement Survive Bankruptcy?*

Mr. Bateman first argues that the Customer Agreement (and hence the arbitration provision) is no longer valid because it was effectively discharged and rendered unenforceable in his bankruptcy. He relies primarily on *Harrier v. Verizon Wireless Personal Comm. LP*,[21] and

---

[15] *Dean Witter Reynolds, Inc. v. Byrd* , 470 U.S. 213, 219 (1985).
[16] *Volt Info. Sciences, Inc.*, 489 U.S. at 479.
[17] *Id.*
[18] *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties.").
[19] *Klay*, 389 F.3d at 1200 (quoting *Mitsubishi*, 473 U.S. at 628).
[20] *In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 796 (11th Cir. 2007).
[21] *Harrier v. Verizon Wireless Personal Comm. LP*, No. 8:12 -cv-1588-T-30AEP, 2012 WL 3655355, *reconsideration denied*, 903 F. Supp. 2d 1281 (M.D. Fla. 2012).

notes that this decision was recently cited with approval in the order denying arbitration of his State Court Action.

But courts do not agree on how a bankruptcy discharge impacts an agreement to arbitrate. Some, such as the *Harrier* court, conclude that if an agreement is not reaffirmed, the bankruptcy discharge nullifies the contract and renders it—and any arbitration clause contained therein—totally unenforceable.[22] Other courts reason that a discharge is limited to relieving the debtor from personal liability and the arbitration agreement survives the discharge.[23] This court finds the latter approach to be more consistent with both the text and structure of the Bankruptcy Code.[24]

A chapter 7 discharge is provided under § 727 of the Bankruptcy Code.[25] Section 727(b) "discharges the debtor from **all debts**" and "**any liability** on a claim" that arose, or are determined to arise, before the bankruptcy is filed.[26] Section 727(b) thus defines the scope of the discharge that Mr. Bateman received in 2014. He was relieved of all of his pre-petition debts, including the amount owed Verizon.

Section 524 of the Code sets forth the effect of a discharge and defines the scope of the discharge injunction which is applicable to all chapters of the Bankruptcy Code.[27] A discharge

---

[22] *See Drew v. Ocwen Loan Servicing, LLC*, No. 8:14-cv-369-T-26TGW, 2014 WL 10504423 (M.D. Fla. April 1, 2014) (finding provision in mortgage waiving jury trial unenforceable because "[a]s in *Harrier*, the instrument containing the provision sought to be enforced was itself discharged in bankruptcy . . . ."); *Jernstad v. Green Tree Servicing, LLC*, No. 11-C-7974, 2012 WL 8169889, at *2 (N.D. Ill. Aug. 2, 2012 (finding plaintiffs' bankruptcy discharge rendered the parties' arbitration agreement unenforceable); *Green Tree Servicing, L.L.C. v. Fisher*, 162 P.3d 944, 948 (Okla.App.Ct. Div. 4 2007) (concluding that the arbitration clause in the loan documents was unenforceable because creditor's contractual relationship with defendant had been terminated by discharge in bankruptcy").

[23] *See In re Williams*, 564 B.R. 770, 775 (Bankr. S.D. Fla 2017) (compelling arbitration of discharge violation claims because the "discharge does not vitiate the effectiveness of an otherwise binding agreement to arbitrate"); *Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*), No. 15-cv-1934(VB), 15-cv-3311(VB), 2015 WL 6163083, at *3-4 (S.D.N.Y. Oct. 14, 2015 (same); *Green Tree Servicing LLC v. Brough*, 930 N.E.2d 1238, 1242-43 (Ind.Ct.App. 2010) (same).

[24] Although I respectfully disagree with the court's reasoning in *Harrier*, ultimately, as discussed later, I agree with the court's conclusion but for different reasons.

[25] 11 U.S.C. § 727.

[26] 11 U.S.C. § 727(b) (emphasis added).

[27] 11 U.S.C. § 524.

voids any judgments for personal liability of the discharged debt and generally enjoins any effort to collect the discharged debts.[28] Section 524 also limits the discharge by providing detailed instructions on how a debt may be reaffirmed and excepted from the discharge.[29] But nothing in § 524 expands the discharge granted under § 727. Indeed, the Supreme Court has made clear that the effect of a chapter 7 discharge is simply to relieve the debtor of personal liability.[30]

The fact that Mr. Bateman did not reaffirm his debt with Verizon does not change this analysis. Section 524(c) is an exception to the general discharge provided in § 727. It provides that an agreement to reaffirm a debt is only enforceable against the debtor if that agreement complies with the strict requirements of the statute.[31] Read in context, the "agreement" referred to in § 524(c) is the potential reaffirmation agreement. It is not the underlying contract that formed the basis of the original debt. Section 524(c) painstakingly instructs how to create a valid and enforceable reaffirmation agreement. It does not speak to the original contract between the debtor and the creditor.

But even if the Customer Agreement is unenforceable after a bankruptcy discharge, it is well-settled "as a matter of substantive federal arbitration law, [that] an arbitration provision is severable from the remainder of the contract."[32] So even if the financial obligations of the Customer Agreement are unenforceable after a discharge, the arbitration provision is severable and survives.

---

[28] 11 U.S.C. § 524(a).
[29] 11 U.S.C. § 524(c) & (k).
[30] *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (stating that a chapter 7 discharge "extinguishes *only* 'the personal liability of the debtor'" and rejecting the argument that the underlying lien disappears with a discharge) (emphasis in original).
[31] 11 U.S.C. § 524(c).
[32] *Buckeye*, 546 U.S. at 445 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

Similarly, any implied "rejection" of the Customer Agreement under § 365 of the Bankruptcy Code does not void the arbitration provision.[33] The record is not clear if the Customer Agreement was an "executory contract" when Mr. Bateman filed bankruptcy. It is not listed as such on his bankruptcy schedules, and he indicates only that his last use of the cell phone was in 2013 (Doc. 1, p. 20). But if the Customer Agreement was executory and if it was impliedly rejected, the rejection simply means that the contract is in "breach."[34] Few would argue that a "breach" of a contract would terminate an arbitration clause contained in the contract.[35] It is the very reason for the arbitration clause in the first place. Similarly, if a contract terminates before bankruptcy, that does not void a severable agreement to arbitrate.[36]

Although the court is skeptical that the arbitration agreement between Mr. Bateman and Verizon truly is a negotiated contract within the meaning of a statute enacted in 1925,[37] particularly since Verizon can unilaterally change any term at any time, the Supreme Court does not distinguish between consumer and commercial arbitration.[38] And this court is bound to uphold consumer as well as commercial arbitration agreements.

For these reasons, the court concludes that the arbitration agreement between Mr. Bateman and Verizon is valid and survives Mr. Bateman's discharge.

---

[33] In a chapter 7 case, an executory contract is deemed rejected if the chapter 7 trustee does not seek to assume the contract within 60 days from the petition date. 11 U.S.C. § 365(d)(1).

[34] 11 U.S.C. § 365(g).

[35] *In re Monge Oil Corp.*, 83 B.R. 305 (Bankr. E.D. Pa. 1988).

[36] *Day v. Persels & Assoc., LLC*, No. 8:10-CV-2463-T-33TGW, 2011 WL 1770300, at *3 (M.D. Fla. May 9, 2011) (citing *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977) (arbitration clause survives the termination of the contract unless the agreement to arbitrate is "negated expressly or by clear implication")).

[37] The court is reminded of an episode from the cartoon series "South Park" in which Apple comes to town and demands blood from iPhone customers because a provision to give up your blood was buried in the consumer service agreement that everyone in South Park had agreed to by simply clicking a box, but of course never read. (Trey Parker, 15 HumancentiPad South Park (2011)).

[38] *See Vernon v. Qwest Comm. Int'l, Inc.*, 857 F.Supp.2d 1135, 1143 (D.Colo. 2012) ("Recent Supreme Court decisions have considered the scope and enforceability of arbitration provisions in commercial and consumer contracts" reaffirming the precept that arbitration is a matter of contract) (citing *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010); *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010)).

***B. But did the Parties Agree to Arbitrate the Contempt Motion?***

Verizon argues that the Motion for Contempt falls within the broad scope of the arbitration agreement because it "necessarily results from his relationship with Verizon and the cellular services provided by Verizon, as it stems from efforts to collect on a debt that Bateman incurred as a result of using Verizon's services" (Doc. 29, ¶ 31). Mr. Bateman responds that enforcement of the Discharge Order is unrelated to the Customer Agreement and thus falls outside the scope of the arbitration agreement (Doc. 36, p. 11).

In bankruptcy, "the interpretation of private contracts is ordinarily a question of state law."[39] Florida law provides the necessary guidance.

Arbitration agreements generally fall into one of two categories: (1) agreements narrow in scope and application, and (2) agreements broad in scope and application.[40] A narrow arbitration provision requires arbitration for claims "arising out of" the subject contract.[41] In contrast, a broad arbitration provision typically requires arbitration for claims "arising out of *or relating to"* the subject contract.[42] Addition of the words *relating to* broadens the scope of an arbitration provision to include claims that have a "significant relationship" to the contract.[43]

The arbitration provision in the Customer Agreement is obviously broad in scope because it requires arbitration of "any dispute that in any way *relates to or arises out of this agreement*[.]" (Doc. 29-3, p. 9) (emphasis added). So the inquiry is whether the Motion for Contempt bears a significant relationship to the Customer Agreement.

---

[39] *In re Rosenberg*, 414 B.R. 826, 840 (Bankr. S.D. Fla. 2009) (quoting *Mastrobuono*, 514 U.S. at 52, n.4 (internal citation omitted).

[40] *Jackson v. The Shakespeare Foundation*, 108 So.3d 587, 593 (Fla. 2013) (citing *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636-37 (Fla. 1999).

[41] *Seifert*, 750 So.2d at 636.

[42] *Id.* at 637 (emphasis in original).

[43] *Id*. at 637-38.

Such a significant relationship exists when there is a "contractual nexus" between the claim and the contract.[44] "A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract."[45] Conversely, "a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public."[46] Indeed, a "relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties."[47] "[T]hat a dispute could not have arisen but for the agreement does not mean that the dispute necessarily 'relates to' that agreement."[48]

Verizon misses the mark when describing the nature of the Motion for Contempt.[49] Mr. Bateman does not argue that the debt collection letter from Verizon's agent violated the Customer

---

[44] *Siefert*, 750 So. 2d at 638.
[45] *Id*.
[46] *Id*.
[47] *Id*. at 639.
[48] *Votzke v. Wells Fargo Bank, N.A.*, No. 8:14-cv-2200-T-27AEP (M.D. Fla. Dec. 16, 2014) (citations omitted).
[49] Apparently, Verizon has tried this argument before. *See In re Jorge*, 568 B.R. 25, 33 (Bankr. N.D. Ohio 2017) ("Verizon mischaracterizes the nature of the claims in the Motion for Contempt."). Moreover, to support its claim as to the robust nature of its arbitration provision, Verizon cites to a number of cases in which "courts throughout the country have enforced Verizon's arbitration provision" (Doc. 29, ¶ 30, fn 4). Those cases, however, are distinguishable. In *Carney v. Verizon Wireless*, No. 09CV1854 DMS (WVG), 2011 WL 3475368, *2 (S.D. Cal., Aug. 9, 2011), the dispute between the parties involved sales tax charged on the plaintiff's cellular phone purchases. The district court found the dispute to be clearly one that "relates to the amount that Plaintiff paid for the products sold by Verizon Wireless 'in connection with' the Customer Agreement, [and thus] is within the scope of the parties' agreement to arbitrate." In *Litman v. Cellco Partnership d/b/a Verizon Wireless*, 655 F.3d 225 (3d Cir. 2011), the issue involved FAA preemption of a New Jersey Supreme Court case that deemed class-arbitration waivers unconscionable and therefore unenforceable under New Jersey law. In *Ikechi v. Verizon Wireless*, No. 10-4554 (JNE/SER), 2012 WL 3079254, *1, *3 (D. Minn. July 6, 2012), *report and recommendation adopted sub nom*, *Albert v. Verizon Wireless*, No. 10-4554 (JNE/SER), 2012 WL3079072, *1 (D. Minn. July 30, 2012), the plaintiff's claim arouse out of a dispute over July 2007 cellular phone service and billing contract. The court held that "[a] plain reading of the valid, enforceable arbitration clause reveals that the FAA applies and that the parties' dispute is within its scope." Each of these cases considered breach of contract claims relative to the scope of Verizon's arbitration clause. Such is not the case here.

Agreement. Rather, Mr. Bateman seeks an order of this court holding Verizon in contempt for violating the Discharge Order and the discharge injunction in 11 U.S.C. § 524.

The lack of a nexus is apparent. The Customer Agreement bears no relation to the issue of contempt. Indeed, to determine if the Convergent letter rises to the level of contempt, it is not even necessary to look at the Customer Agreement. Although federal policy does require that doubts generally be resolved in favor of arbitration, federal policy cannot serve to stretch a contract beyond the scope originally intended by the parties.[50]

More importantly, a court has a significant interest in enforcing any injunction it issues, and this court has not agreed to arbitrate its contempt powers. As discussed in more detail below, the court has a substantial interest in enforcing its own orders and protecting the integrity of the discharge injunction.[51] Contempt powers are vital and significant to any judicial process, but are particularly crucial when enforcing injunctions. And they may include, in the proper case, those traditional sanctions for coercing compliance with an injunction such as incarceration or financial penalty.[52]

***C. Is there an Inherent Conflict between Enforcement of the Arbitration Agreement and the Underlying Purposes of the Bankruptcy Code?***

Enforcement of an arbitration provision under the FAA may be overridden by a "contrary congressional command."[53] To determine this congressional intent, the Supreme Court directs

[50] *Seaboard Coast Line R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir. 1982) (citations omitted).

[51] *In re Grant*, 281 B.R. 721,724 (Bankr. S.D. Ala. 2000) (refusing to compel arbitration of a violation of the automatic stay and discharge orders stating "[t]his Court entered those orders. This Court is a party to those orders and the Court is an entity offended if the orders are not obeyed. A party who has not agreed to arbitration of its claim cannot be forced to arbitrate (citation omitted). This Court does not agree to arbitrate the claims.").

[52] *Alderwoods*, 682 F.3d at 966 (discussing the nature and extent of the bankruptcy court's contempt powers to enforce a discharge injunction).

[53] *In re Williams*, 564 B.R. at 773 (citation omitted).

courts look to three factors: "(1) the text of the statute; (2) its legislative history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists."[54]

The Eleventh Circuit already has found "no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code."[55] This finding was in the context of a motion to compel arbitration of a "non-core" bankruptcy proceeding involving damages under a complex commercial construction contract. Indeed, in such non-core proceedings, the Eleventh Circuit has stated that bankruptcy courts have no discretion to ignore a valid arbitration agreement negotiated between parties to the dispute.[56]

But with respect to "core" bankruptcy matters, the Eleventh Circuit has left the door open, and directed consideration of whether an inherent conflict exists between enforcement of an arbitration provision and the underlying purposes of the Bankruptcy Code.[57] Because Mr. Bateman's Motion for Contempt falls within this court's "core" jurisdiction, the court must therefore determine whether enforcing the parties' arbitration agreement presents an inherent conflict with the underlying purposes of § 524(a)(2) and the Discharge Order.

Most recently, the Second Circuit answered this precise question with a resounding yes.[58] The *Anderson* court affirmed the bankruptcy court's conclusion that a dispute as to an alleged discharge violation should not be sent to arbitration. In so ruling, the Second Circuit found a specific and inherent conflict between enforcement of the arbitration agreement and enforcement of a bankruptcy discharge. The court noted that "the successful discharge of a debt is not merely

---

[54] *Id.* (citations omitted).
[55] *Id.* (citing *Whiting-Turner Contracting Co. v. Elec. Mach. Enter.'s Inc.*, 479 F.3d 791, 796 (11th Cir. 2007)).
[56] *Whiting-Turner*, 479 F.3d at 796.
[57] *In re Williams*, 564 B.R. at 773 (quoting *Whiting-Turner*, 479 F.3d at 796).
[58] *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382 (2d Cir. 2018).

important to the Bankruptcy Code, it is its principal goal," and further finds that enforcement of a discharge "strikes at the heart of the bankruptcy court's unique powers to enforce its own orders."[59]

The Eleventh Circuit likewise recognizes the unique contempt powers of a bankruptcy court to enforce a discharge injunction. In *Alderwoods*, Judge Tjoflat writes:

> Bankruptcy judges like district judges have the power to coerce compliance with injunctive orders. In the bankruptcy context, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the discharge." (citations omitted) … In addition to the traditional sanctions for contempt for coercing compliance with an injunction – incarceration or financial penalty (citation omitted) – a bankruptcy court may issue orders to obviate conduct that stands to frustrate administration of the Bankruptcy Code (citations omitted).[60]

Judge Tjoflat concludes that "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order."[61]

Accordingly, the court finds that arbitration of a contempt proceeding for violation of the discharge injunction inherently conflicts with the Bankruptcy Code and undermines the bankruptcy court's authority to enforce its orders and exercises its powers of contempt.[62]

For these reasons, the Motion to Compel is denied. The court will enter a separate order denying the motion and setting a schedule for further proceedings.

---

[59] *Anderson*, 884 F.3d at 386.
[60] *Alderwoods*, 682 F. 3d at 966.
[61] *Id.* at 970. Although *Alderwoods* was decided in the context of a chapter 11 case, the reasoning should be no different in a chapter 7 case.
[62] See *Hooks v. Acceptance Loan Co., Inc.*, No. 2:10-CV-999-WKW, 2011 WL 2746238, *5 ("As a general matter, allowing arbitration of contempt proceedings would effectively strip the courts of their primary enforcement mechanism.").